NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0067n.06
Filed: January 22, 2008

No. 06-4433

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN WYSONG, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United |
| | ) | States District Court for the |
| CITY OF HEATH, | ) | Southern District of Ohio |
| | ) | |
| Defendant-Appellant. | ) | |

Before:        BOGGS, Chief Judge; KENNEDY, Circuit Judge; and JORDAN, District Judge.[*]

BOGGS, Chief Judge. Officers Bruce Ramage and Jaimee Coulter appeal the district

court's denial of their motion for summary judgement based on qualified immunity. John Wysong

sued the defendants under § 1983 for using excessive force when they arrested him. This case is on

its second interlocutory appeal; the district court previously denied the defendants' motion for

summary judgment and a panel of this court affirmed in an unpublished order. After the case

returned to the district court, the defendants took additional discovery, renewed their motion for

summary judgment, had the motion denied, and appealed again.

We reverse because Wysong cannot raise a genuine issue of material fact. He has no

evidence to support his claim, and after the previous interlocutory appeal, has admitted in a

deposition that he has no memory of the relevant events. We hold that on the undisputed facts of

_____

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

this case—undisputed because Wysong cannot contradict the version told by the police officers and a disinterested witness—no constitutional violation occurred and that the officers are therefore entitled to summary judgment.

## I

## A

John Wysong has suffered from diabetes for seventeen years. He takes medication to control his disease, but on several occasions his blood sugar has plunged unexpectedly. Previous sudden drops in blood sugar have caused Wysong to act aggressively and later not remember what happened. During at least one of these episodes, he acted "out of control," "resisted" his wife's attempts to help by giving him orange juice, and yet did not remember struggling once he recovered. Wysong was driving home from work on July 13, 2002, at about 8:45 p.m., when he experienced a hypoglycemic attack. He pulled into a Kroger grocery store intending to buy something to correct his blood sugar imbalance. Wysong's last memory before waking up handcuffed in a police car is pulling his truck into the grocery store parking lot.

At approximately 8:49 p.m. that night, Officer Bruce Ramage of the Heath Police Department was leaving the same parking lot when two young adult females, Trese Whytal and Mary Watring, met him and complained that a man in a white truck was making obscene gestures and comments towards them and was kicking the window in his truck. Officer Ramage radioed the police dispatcher, watched the man leave his truck, noticed that the man was staggering, and then approached the man and asked if the truck was his. The man was John Wysong. Wysong answered "whose truck?," turned, and ran.

Ramage chased Wysong and radioed for help, yelling "Stop!" and "You're under arrest!" until he "was able to strike his shoulder blade with my open hand [and] cause[] him to go to the ground." Meanwhile, Officer Jaimee Coulter arrived. The two officers went over to Wysong, who was lying on his stomach and "screaming," and tried to get Wysong's hands behind his back in order to cuff Wysong.

Up to this point, Wysong does not dispute the officers' testimony or challenge their actions. He admits that they could not have known at this point whether his odd behavior arose from mental illness, intoxication, or criminal intent. After this point, three different stories emerge: the story told by the officers and Ms. Whytal, the story told by Wysong's litigation documents, and the story told by Wysong's deposition.

The officers say that Wysong refused to pull his arms from beneath his body and violently resisted their attempts to handcuff him. During this struggle, Wysong kicked Ramage and Coulter. *Ibid.* Unable to move Wysong's arm, Ramage resorted to "some open-handed strikes" on Wysong's leg, and with Coulter's help was finally able to cuff Wysong's left wrist. Officer Mark Phillips then arrived. Phillips testified that Wysong was "flailing about his arms and legs" and that Phillips put his knee in Wysong's back to help subdue Wysong. The three officers finally managed to cuff Wysong's other wrist and get him into the squad car. Officer Ramage then interviewed Ms. Whytal and Ms. Watring, who had witnessed the event. Whytal later swore in an affidavit that Wysong was "out of control and struggling with the police when they tried to handcuff him. At no time was [he] lying motionless on the ground."

Wysong managed to "come around" and told the officers that he was a diabetic.[1] The officers then called the paramedics, and told them to go to the police station because the station was roughly the same distance from the store as the hospital. Once they arrived at the station, the paramedics gave Wysong emergency treatment and then took him to the hospital. The medical staff reported that Wysong's actions were caused by an uncontrollable medical condition, and opined that he should not be charged or arrested for that reason. Wysong was later charged with one misdemeanor count of disorderly conduct, but the charge was soon dropped.

Wysong tells a different story in his complaint and briefs. In them, he alleges that when he was on the ground, he *was not resisting the officers in any way*. He said that he was "not conscious" when he was on the ground and the police were using force against him. He claims that the police account of his resistance is "completely untrue," but he does not explain how he knows the police are lying when he himself cannot speak to what happened. Wysong presented no other witnesses or physical evidence to confirm his story. The hospital report stated that he denied experiencing body aches and showed no injuries other than a bruised left knee. The district court saw a conflict between Wysong's claim and the police testimony, so it ruled that factual questions precluded granting summary judgment for the defendants.

---

[1]Wysong was wearing a medical alert medallion around his neck that was three-quarters of an inch in diameter and said "insulin" on the back, but the officers had not noticed it. The record does not say whether this medallion was worn outside or inside of Wysong's clothing, and its location does not affect our decision, but the fact that the medallion was only noticed after Wysong partially lost his shirt in the scuffle, suggests to us that it was underneath his clothing and therefore out of sight.

After the first interlocutory appeal, the defendants took Wysong's deposition. In the deposition, Wysong clarified (or shifted) his position away from an affirmative claim of what happened to an admission that he did not know what happened. Wysong did not assert that he was "knocked out" when he was on the ground, but that he had *no conscious memory* of what happened and *could not affirm or deny any of his actions while on the ground*.

> Q. Now, when you use the word "unconscious," what you mean is that you have no conscious memory of what occurred.
> A. Yes.
> Q. *But you are not able to say that you were unconscious in the sense that you were completely motionless, not moving*; is that correct?
> A. Yes.
> . . .
> Q. Now, would I be correct in saying that you have no memory as to whether you became combative; is that correct?
> A. Yes.
> Q. You are not saying you didn't. You just have no memory.
> A. Yes.
> Q. Now am I correct in saying that you have no memory of scuffling with the police; is that correct?
> A. Yes.
> Q. *You are not saying that didn't happen. You are saying that you have no memory of it*; is that correct.
> A. Yes.

This deposition is also where Wysong admitted to the prior incidents where a drop in blood sugar made him act belligerently but then forget the entire episode.

B

Wysong filed his complaint on March 28, 2004. The defendants moved for summary judgment on August 13, 2004. On January 18, 2005, the district court partially granted the motion, dismissing all of Wysong's claims except his Fourth Amendment claim for excessive force. The

court reasoned that "the essential facts—Plaintiff's behavior while he was on the ground—are in dispute" because "[p]laintiff claims he was in an unconscious state, not resisting," when the officers used force. The court construed Wysong's allegation that he was "unconscious" while on the ground to mean that Wysong claimed that he was "lacking consciousness," or "knocked out." This is a legitimate definition. *American Heritage Dictionary of the English Language* 1873 (4th ed. 2000) (defining "unconscious" as "lacking consciousness"). The district court denied qualified immunity based on this perceived fact dispute. The defendants filed an interlocutory appeal on the issue of qualified immunity. A panel of this court issued a three-paragraph order, affirming and adopting the reasoning of the district court. *Wysong v. Ramage*, 166 F. App'x 835 (6th Cir. 2006) (per curiam).

On remand, the defendants took additional discovery, including Wysong's above-cited deposition in which he acknowledged his lack of memory, and moved again for summary judgment based on qualified immunity. The deposition showed that by "unconscious," Wysong meant that his physical actions were taken "without conscious control," or were "involuntary." This is also a reasonable definition. *American Heritage Dictionary of the English Language* 1873 (4th ed. 2000) (giving another definition of "unconscious" as "without conscious control [or] involuntary").

Despite this clarification and Wysong's admission that he could not remember anything he did, the district court perfunctorily dismissed the defendants' renewed motion for summary judgment as a "third attempt to litigate issues already decided." The order relied exclusively on language from its first order stating that Wysong could testify that he was "unconscious" when the officers used force. It did not even acknowledge the difference between Wysong's deposition and the words of

his complaint, and it did not engage the defense contention that Wysong could not say that he was unconscious in the "knocked-out" sense.

The defendants appealed again. Wysong filed a motion to dismiss the appeal for lack of jurisdiction, but a motions panel denied the motion, reasoning that "this appeal contains additional evidence" and raises a new legal question of whether, in light of this evidence, the defendants are entitled to judgment as a matter of law. *Wysong v. City of Heath*, No. 06-4433, (6th Cir. March 14, 2007) (unpublished order). We now answer that question.

II

We review *de novo* a district court's denial of a motion for summary judgment premised on qualified immunity. *Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir. 1999). On an interlocutory appeal such as this one, we consider only abstract issues of law, so we must accept "the facts alleged by the plaintiff and discuss only the legal issues in the case." *Shehee v. Luttrell*, 199 F.3d 295, 299 (6th Cir. 1999). To withstand summary judgment, the plaintiff must show a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The evidence must be admissible to create a genuine issue for trial, *id.* at 247, because if the evidence is not admissible, there is nothing on which a jury could base its decision. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In qualified immunity cases, the plaintiff bears

this burden; he must show that the defendant is not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

III

Before considering qualified immunity, we pause to explain our jurisdiction to hear this case. First, the "law of the case" doctrine does not control our decision. Under the law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). Likewise, "findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994).

Although the first panel to hear this case affirmed the district court's denial of qualified immunity, the motions panel, in denying the motion to dismiss this second interlocutory appeal, held that the law of the case does not bind our panel to the previous result. We agree. The law of the case doctrine does not apply in three "exceptional circumstances." *Westside Mothers*, 454 F.3d at 538. One such "exceptional circumstance" is when "substantially new evidence has been introduced." *Ibid.* This exception applies here, because the facts in this appeal differ from the facts in the first appeal. In the first appeal, the ambiguous use of "unconscious" led the court to decide the issue as if Wysong claimed to have been "knocked out" or motionless. In this appeal, the ambiguity has been eliminated through the new evidence in Wysong's deposition. Despite the assertions in the district court's most recent decision, we now know that Wysong makes no claim of being "knocked out."

Instead, he admits that he has no memory of the relevant events and contends that whatever physical movements he made were not voluntary acts.[2]

While successive interlocutory appeals on qualified immunity may be unusual, they are not unheard of, and they are not subject to any special disfavor. *See Behrens v. Pelletier*, 516 U.S. 299, 306 n.2 (1996) (permitting second interlocutory appeal and observing that "*Mitchell* itself dealt with the second of two interlocutory appeals on immunity claims). The Supreme Court observed that in *Mitchell*, "neither the Court of Appeals nor this Court assigned any significance to the successive aspect of the second appeal." *Ibid.* We do likewise and assign no significance to the "successive aspect" of the appeal now before us.

Second, the familiar rule in *Johnson v. Jones*, 515 U.S. 304 (1995), does not apply. *Johnson* held that a court of appeals, when hearing a qualified immunity case on interlocutory review, does not have jurisdiction to disagree with a district court's decision that the record contains a factual dispute that must be resolved at trial. *Id.* at 320. A more recent Supreme Court case explains why, despite *Johnson*, we may decide this case before us. In *Scott v. Harris*, 127 S. Ct. 1769 (2007), the district court found a genuine issue of material fact as to the plaintiff's conduct, and the Eleventh Circuit decided that it therefore had no jurisdiction to overturn the district court's decision. *Scott*, 127 S. Ct. at 1773.

---

[2] Indeed, in his oral argument, Wysong's counsel abandoned the claim that Wysong was knocked out, focused his arguments on Wysong's actions being involuntary, and stated that "all Wysong meant by his original statement was that he had no conscious memory. "

But the Supreme Court reversed 8-1, and in the process rejected both the plaintiff's version of the facts and the district court's determination that a genuine factual dispute existed. *Ibid.* The case dealt with a high-speed police chase, and the incident had been caught on video. The Court looked to the video, and said that the plaintiff's version of the events was "so utterly discredited by the record that no reasonable jury could have believed him" and that his story was "blatantly contradicted by the record." *Scott*, 127 S. Ct. at 1776. Furthermore, we agree with the Third Circuit that the Court disagreed with the lower courts "as to what Harris's actions actually were, and not merely whether they could be described as 'dangerous to others.'" *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 n.7 (3d Cir. 2007). Neither the majority nor Justice Stevens's lone dissent in *Scott* mentioned *Johnson v. Jones*, or addressed the question of jurisdiction, but logic dictates that *Scott* must have modified *Johnson*'s language about jurisdiction in order to reach the result it did.

In *Blaylock*, the Third Circuit reconciled *Scott* and *Johnson* by saying that *Scott* represents "the outer limit of the principle of *Johnson v. Jones*—where the trial court's determination that a fact is subject to reasonable dispute is blatantly and demonstrably false, a court of appeals may say so, even on interlocutory review." *Blaylock*, 504 F.3d at 414. We agree with, and follow, the Third Circuit's view as a principled way to read *Johnson* and *Scott* together and to correct the rare "blatan[t] and demonstrabl[e]" error without allowing *Scott* to swallow *Johnson*. Here, Wysong himself admitted in a deposition that no factual dispute exists, so we are comfortable in saying that any determination to the contrary is "blatantly and demonstrably contradicted by the record," *Scott*, 127 S. Ct. at 1776, and that we have jurisdiction "to say so, even on interlocutory review." *Blaylock*, 504 F.3d at 414.

No. 06-4433
Wysong v. City of Heath

IV

Courts reviewing § 1983 claims alleging excessive force must first consider whether the officer violated the constitution by using excessive force, then decide whether the officer deserves qualified immunity because he did not violate "clearly established" federal law. The Supreme Court has held that these inquiries are distinct, *Saucier v. Katz*, 533 U.S. 194, 204 (2001), so we separate the inquiries despite the possibility for confusion this requirement creates.[3]

Both points turn on a question that is simultaneously simple and complex. If Wysong was resisting arrest, even if his resistance arose from involuntary muscle spasms brought on by diabetes, the officers did not use excessive force and certainly would be entitled to qualified immunity if they did. By contrast, if Wysong was lying motionless on the ground—if he was "unconscious" in the sense of being knocked out—the officers used excessive force and are not entitled to qualified immunity. This is an interlocutory appeal, so we must view the facts in the light most favorable to the plaintiff. In most cases, the result would be the result reached by the district court, a decision that factual disputes warrant denying summary judgment. The difference in this case is whether Wysong can present any "facts" to view favorably when he offers no external evidence, identifies no supporting witnesses, and cannot remember the underlying events.

A

---

[3]While they may be conceptually distinct, they also blur easily. Some authorities favor permitting courts to discuss either or both issues as the case warrants. *See, e.g.*, *Scott v. Harris*, 127 S. Ct. 1769, 1780 (2007) (Breyer, J., concurring) (agreeing with the "commentators, judges, and in this case, 28 States in an amicus brief" who believe *Saucier*'s inquiry should be simplified).

The Fourth Amendment's "objective reasonableness" test applies to all claims for excessive force. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Ibid.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). The test is fact specific, not mechanical, and the three most important factors for each case are: (1) the severity of the crime at issue; (2) the threat of immediate danger to the officers or bystanders; and (3) the suspect's attempts to resist arrest or flee. *Id.* at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 301 F.3d 937, 944 (6th Cir. 2002).

Our cases show that the police may use force on suspects who resist arrest in the manner in which Wysong resisted. When a suspect merely "twisted and turned some," police had the right to use force when arresting him. *Burchett*, 301 F.3d at 940, 943. Likewise, our court granted qualified immunity to police officers who tackled a suspect who had led them on a low-speed chase to the police station. *Goodrich v. Everett*, 193 F. App'x 551, 556 (6th Cir. 2006). *Goodrich* held that even if the officers were "kneeing and kicking" the plaintiff while handcuffing him, the force was not unreasonable in the context of an arrest where a reasonable officer could have concluded that the plaintiff "was capable of violence and intended to flee." *Ibid.* at 557. Our court has even found that a punch resulting in a broken jaw, a much more serious level of force than that used against Wysong, is reasonable when the suspect is moving erratically and apparently attempting to escape:

> While Mr. Schliewe was not charged with a serious crime, it was difficult for the officers to judge his intentions because Mr. Schliewe had behaved erratically during the evening and was apparently intoxicated. Mr. Schliewe was attempting an escape from the holding area of the police station and resisted the officers' attempts to subdue him, thus justifying the use of at least some force. Mr. Schliewe focuses on the blow struck by Officer Toro as unreasonable. While punching someone may not be the best way to prevent his escape, it cannot be said that the blow was objectively unreasonable.

*Schliewe v. Toro*, 138 F. App'x 715, 721–22 (6th Cir. 2005).

All of these cases involve individuals who, like Wysong, were suspected of relatively minor crimes and who put up a similar, or lower, level of resistance, and who were subjected to a similar, or higher, level of force.[4] Therefore, if the officers' story is true, no excessive force was used.

The law is equally clear that force can easily be excessive if the suspect is compliant. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004). There is no government interest in striking someone who is neither resisting nor trying to flee. *Smoak v. Hall*, 460 F.3d 768, 784 (6th Cir. 2006) (unreasonable to tackle a cuffed and compliant suspect); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1998) (holding blow to cuffed, unresisting suspect unreasonable). Therefore, if Wysong was not resisting, the officers' use of force was excessive.

B

Police officers are entitled to qualified immunity unless their conduct violates "clearly established constitutional or statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly

---

[4]Wysong's resistance may not have been the product of a conscious decision, but the officers did not know this. They were confronted with a man who was on the ground kicking and screaming and were forced to make an "on the spot judgment." *Burchett*, 301 F.3d at 944.

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

It requires a two-step inquiry. First, the court must determine whether, based upon the applicable

law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation

occurred. If the answer is yes, then the court asks whether the violation involves "clearly established

constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan*, 101

F.3d 1151, 1158 (6th Cir. 1996). Qualified immunity is immunity from suit, not just immunity from

damages. *Crockett v. Cumberland College*, 316 F.3d 571, 578 (6th Cir. 2003).

The Supreme Court emphasized that it is not enough for a right to be "clearly established"

as a general proposition; it must be "clearly established" in the "more particularized, relevant sense"

of the "specific context of the case." *Saucier*, 533 U.S. at 201. A plaintiff need not offer precedent

with "materially similar facts," but the precedent must give "fair warning" that the action in question

is unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002).

Turning to Wysong's case, we hold that if the officers struck him when he was not resisting,

they will not receive qualified immunity. The same cases holding that police may not use force on

a subdued, non-resisting subject hold that the right to be free from physical force when one is not

resisting the police is a clearly established right. *Smoak*, 460 F.3d at 784 (law clearly established that

tackling subdued suspect would have been unreasonable); *Champion*, 380 F.3d at 902 (courts have

"consistently held that various types of force applied after the subduing of a suspect are unreasonable

and a violation of a clearly established right"). Therefore, the qualified immunity question, like the

excessive force question, turns on Wysong's conduct while on the ground.

C

The question now becomes whether Wysong can raise a genuine issue of material fact regarding his conduct, given his deposition. The Eighth Circuit faced a similar case and granted summary judgment for the defendant. *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006). In *Wertish*, officers followed a motorist, Wertish, who was driving erratically. Wertish, like Wysong, was suffering a hypoglycemic attack and admitted to being "out of it." *Id.* at 1065. The police said that when they finally pulled Wertish over, he did not respond to their commands and put his hands behind his back. *Ibid.* A scuffle followed, in which the officers "struck" Wertish several times, cuffed him, and "pushed him up against the truck." *Ibid.* This parallels the amount of force the police used on Wysong. Like Wysong, Wertish remembered nothing from the time he heard the police siren to when "they had me slammed up against the truck." *Ibid.* Like Wysong, Wertish denied resisting, but admitted that he could not remember what happened. *Ibid.*

The court pointed to Wertish's lack of memory and said that [i]f [officer] Krueger's *unrefuted version of the events* establishes that his use of force was reasonable," summary judgment was appropriate. *Ibid.* (emphasis added). The court explained that the use of force was reasonable given Wertish's resistance, and argued that Wertish's minor scrapes and bruises were further evidence that no excessive force was used. *Id.* at 1067.[5] The key point is that the court disregarded the allegations in Wertish's pleadings once Wertish admitted that he could not remember what happened. Another circuit applied the same reasoning in a different context. *See Curley v. Villiage*

---

[5] Wertish suffered "bruised ribs, a sore shoulder, and multiple abrasions to his face and head." *Wertish*, 433 F.3d at 1066. Notably, Wysong's injuries were even less serious because his hospital report listed only his bruised knee.

*of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (granting summary judgment based on qualified immunity when the police testified to their own conduct and the plaintiff admitted that he "could not recall" the critical events). We follow the same path.

District court cases from our circuit confirm our judgment. When a plaintiff admitted that he was too drunk to remember what happened when the police shot at his car, the court granted summary judgment to the officers based on qualified immunity. *Perrien v. Towels*, No 1-05CV928, 2006 WL 1515663 (N.D. Ohio, May 30, 2006). Despite his lack of memory, the plaintiff asserted that he could not have driven his car towards the officers right before they fired, and insisted that the wet conditions or a mechanical failure must have been responsible for the car's movement. *Id.* at *5. The court rejected this speculation, and ruled that because the plaintiff could not dispute the testimony of the officers, it would accept the officers' version of the events and grant the officers summary judgment. *Id.* at *7. Another court found for an officer when a suspect claimed that he could not remember any of the events surrounding his flight from, and fight with, the police, but nevertheless insisted that the police used excessive force. *Woods v. Jefferson County Fiscal Court*, No 3-01CV-210-H, 2003 WL 145213 (W.D. Ky. Jan. 8, 2003). The court accepted the officer's story because the suspect "*has no memory of the events, and therefore his testimony cannot be a factor.*" *Id.* at *5 (emphasis added).

Like the plaintiffs in *Woods*, *Perrien*, and *Wertish*, Wysong cannot remember the relevant events. Contrary to the district court's ruling, Wysong *cannot* testify that he was "unconscious" when the officers were arresting him. Wysong admitted in his deposition that he does not deny that he fought with the officers; he only claims that he does not remember what happened. He even

admitted that on previous occasions, his blood sugar dropped, he acted aggressively, and later did not remember what he had done. Like the plaintiffs in the previous cases, Wysong cannot establish a genuine issue of material fact. While we must view the facts in the light most favorable to Wysong, we are not obligated to treat a naked assertion in a litigation document as establishing a "fact" when he admits to having neither personal knowledge nor other evidence to support his claim. *See U.S. Structures v. J.P. Structures*, 130 F.3d 1185, 1189 (6th Cir. 1997) (summary judgment appropriate against party who fails to offer *admissible* evidence in opposition to a motion for summary judgment).

D

Wysong cites several cases, but these cases only highlight the contrast between situations where qualified immunity was properly denied and his own situation. In every one, one or more of the following facts not present in his own case exist: (1) the plaintiff had personal knowledge of the underlying events; (2) the officers knew that the plaintiff had a medical condition before resorting to force; or (3) the plaintiff supported up his claims with other evidence.

In *Bultema v. Benzie County*, 146 F. App'x 28 (6th Cir. 2005), Bultema claimed that an arresting officer used excessive force by striking him across the head with a nightstick when Bueltma was already cuffed. *Id.* at 36. The court rejected the defense motion for summary judgment even though Bueltma could not remember, and no one else actually saw, the blow. However, the court relied on a witness who heard the officer yelling at Bueltma, "heard a whack and a thud," and turned around and saw the cuffed Bueltma sprawled on the ground. *Ibid.* The court reasoned that one could "reasonably infer" from this evidence that the officer struck Bueltma. The case does not help

Wysong because Wysong can point to no eyewitness testimony from which reasonable inferences in his favor can be drawn. The only eyewitness agrees with the police.

In *Rivas v. City of Passaic*, 365 F.3d 181 (3d Cir. 2004), the court denied summary judgment, holding that a jury could believe the testimony of Rivas's wife that Rivas was simply flailing his arms because of a seizure and not resisting in the way the officers claimed. *Id.* at 199. Rivas could not testify because he later died from his injuries, but *Rivas's wife testified from personal knowledge as to what happened*. Some physical evidence also suggested that the officers shoved a flashlight into Rivas's mouth. *Ibid.* Once again, Wysong offers no such evidence.

Wysong also relies on *Lolli v. County of Orange*, 351 F.3d 410, (9th Cir. 2003), for the proposition that violence against a person suffering a diabetic seizure is excessive. But *Lolli* does not help him, because in *Lolli* the plaintiff told the officers that he had diabetes long before the violence occurred, and he remembered everything that happened. *Id.* at 415–17. Lolli also suffered multiple open wounds and fractured ribs. *Id.* at 417. Wysong did not. Wysong also points to *Frazell v. Flanigan*, 102 F.3d 887 (7th Cir. 1996), *abrogation on other grounds recognized by McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002), but the same analysis applies. In *Frazell*, the plaintiff, who claimed that the officers used excessive force when they mistook his epileptic seizure for belligerence, testified from personal knowledge to at least some of the events in question, said that he told the officers of his condition before any violence occurred, offered two witnesses who confirmed his testimony, and suffered severe injuries requiring hospitalization. *Id.* at 880–82.

Before concluding, we highlight the deficiencies in Wysong's case by explaining how a single difference in the record would lead to a different result. If Wysong offered a witness who

testified that he was lying motionless, i.e., unconscious in the "knocked out" sense, while the police struck Wysong, he would have created a fact question for the jury. He has not. Wysong could raise a fact question through his own testimony, but he cannot because admits to not remembering the relevant events. He cannot even raise the inference that his lack of memory is the fault of the officers; his memory loss predates the struggle with the officers.

This is a case where the officers and third-party witness tell a story that establishes the officers' right to qualified immunity. In response, Wysong admits that he cannot remember the events, admits that he has no external evidence to back up the story he tells, and even agrees with the hospital report that said he suffered no physical injuries from any of the officers' blows. Wysong cannot beat something with nothing.

The undisputed facts in this case show that no constitutional violation occurred. Therefore, we REVERSE the judgment of the district court.