NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0621n.06
Filed: October 15, 2008

No. 07-4262

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

STEVEN E. LANDIS, )
)
    Plainitff-Appellee )
)
                     **ON APPEAL** FROM THE UNITED
v. )  STATES DISTRICT COURT FOR THE
)  SOUTHERN DISTRICT OF OHIO
DAVID PHALEN, FAIRFIELD COUNTY )
SHERIFF, et al., )
)
    Defendants-Appellants, )
)

BEFORE:     BOGGS, Chief Judge; MERRITT and GRIFFIN, Circuit Judges

I.

    **MERRITT, Circuit Judge.** Plaintiff Steven E. Landis sued Fairfield County Sheriff's

Deputies Greg Storts ("Deputy Storts") and Jamey Allen ("Deputy Allen") and Sergeant Marian

DeVault (collectively "Defendants") in the United States District Court for the Southern District of

Ohio, alleging federal and state law claims arising out of his arrest on July 17, 2004. On October

7, 2007, the district court entered an opinion and order granting in part and denying in part

Defendants' motion for summary judgment. In pertinent part, the district court denied Defendants'

request for qualified immunity on Plaintiff's Fourth Amendment claim of excessive force in

violation of 42 U.S.C. § 1983.[1]

---

[1]The district court also ruled that Defendants were entitled to qualified immunity on
Plaintiff's claim that he was arrested without probable cause, and that his § 1983 claim for violation

Defendants appeal the district court's denial of qualified immunity. Plaintiff moves this court to dismiss the appeal for want of jurisdiction under 28 U.S.C. § 1291. For the reasons that follow, Defendants' interlocutory appeal is dismissed.

**II.**

In the early morning hours of July 17, 2004, Deputies Storts and Allen responded to a domestic disturbance call at a local residence. On arrival, they observed Plaintiff's son, Steven M. Landis, standing outside and spoke with him. The son stated that he and Plaintiff had been drinking and had since gotten into an argument about whether the son was sober enough to leave by car.

Shortly after the Deputies' arrival, Plaintiff came outside. Deputy Storts told Plaintiff that, if the son was not drunk, he was legally entitled to leave because he was an adult. Deputy Allen then administered a sobriety test, found the son was sober enough to drive, and permitted him to leave. Around this time, Plaintiff's wife, Norma Rooker-Landis ("Rooker"), also arrived on the scene and began speaking to the Deputies.

After the son left, Plaintiff went back inside the residence while Rooker remained outside, speaking to the Deputies. Some time later, Plaintiff stepped out on his porch to yell (at times obscenely) at the Deputies to get off his property and to tell Rooker not to talk to them anymore. He then returned inside. This process repeated itself several times and, eventually, Deputy Storts

---

of his First Amendment right to free speech and state law claims for false imprisonment, malicious prosecution, abuse of process, assault and battery, intentional infliction of emotional distress, and spoliation were all without merit. Op. and Order, J.A. at 1127-29. None of those issues are before the panel.

warned Plaintiff that, if he stepped outside again, he would be placed under arrest. Undeterred, Plaintiff persisted in coming outside and was placed under arrest.

The central facts surrounding the arrest itself are as follows. Deputy Storts arrested Plaintiff on the porch. He struggled to put Plaintiff in handcuffs, and called for the momentary assistance of Deputy Allen (who, until then, was talking to Rooker). Once handcuffed, Deputy Storts escorted Plaintiff to a nearby police cruiser for a pat down and Deputy Allen returned to Rooker to explain the situation. During the pat down, Deputy Storts discovered that one of Plaintiff's hands had come free from the handcuffs. As Deputy Storts attempted to put the hand back in the cuffs, the two men went to the ground on Plaintiff's gravel driveway. On the ground, Plaintiff lay on his stomach and Storts sat atop him, pinning him with his knee, and continued trying to put the errant hand back in the handcuffs. Once Deputy Allen noticed what was happening, he stopped talking to Rooker and went over to assist, helping Deputy Storts to secure Plaintiff's errant hand and recuff it. When securely handcuffed, Plaintiff was brought to his knees and dirt and scratches were observed on his face. The Deputies called paramedics to the scene. The paramedics identified abrasions and gravel in Plaintiff's face, but he refused treatment.

There were five witnesses to the arrest: Plaintiff, Deputy Storts, Deputy Allen, Rooker, and Shawn Nutter, a friend of Deputy Allen's brother who was on a police ride-along and watched from the police cruiser. Their depictions of the encounter vary.

Plaintiff testified that, as he was being handcuffed on the porch, he turned around to ask what the charges were. Steven E. Landis Depo., J.A. at 114. When told he was under arrest for obstruction of justice, he replied "bullshit" and was shoved through his screen door by Deputy Storts,

-3-

knocking him out. *Id.* at 114-15. He regained consciousness to find himself being choked by Deputy Storts while bent over the back of the police cruiser, at which point both his hands were in handcuffs. *Id.* at 115. He then lost consciousness a second time, only to regain consciousness once on the ground of his gravel driveway. *Id.* When he came to, his right hand was free and Deputy Storts was on top of him, smashing his face into the gravel. *Id.* Plaintiff then outstretched his arms in submission and twice exclaimed to Rooker that he was not resisting. *Id.* Deputy Storts then smashed his head into the gravel a final time and warned him to keep quiet or he would "break [his] neck."[2] *Id.*

Deputy Storts testified to the same sequence of events (that is, from the porch to the cruiser to the ground), but insisted that Plaintiff had resisted arrest throughout the encounter. Greg Storts Depo., J.A. at 550-57.

Although Deputy Allen twice offered assistance to Storts — first helping to handcuff Plaintiff on the porch and later to grab Plaintiff's errant hand on the ground — he had his back turned for most of the encounter because he was talking to Rooker. Jamey Allen Depo., J.A. at 479-80. In turn, he "[d]id not see any resisting arrest." *Id.* at 480. Deputy Allen did, however, overhear Plaintiff yell "uh" or "ooh" as if someone was "falling down" and Deputy Storts say "How did you get out of those handcuffs?" just before the two men fell to the gravel driveway. *Id.* at 480-81.

---

[2]Plaintiff described the encounter a second time (in less detail) to clarify his state of consciousness during the incident. *See* Steven E. Landis Depo., J.A. at 116-19. This account goes as follows. Plaintiff was arrested by Deputy Storts on the porch, pushed through the door, and lost consciousness; regained consciousness at the cruiser while being choked and lost consciousness; regained consciousness on the ground and found himself pinned under Deputy Storts and having his face pushed into gravel, extended his arms and told Rooker he wasn't resisting, and, finally, had his face pushed into the gravel as Deputy Storts warned that he would "break [his] neck." *Id.*

-4-

Rooker testified that, in arresting Plaintiff on the porch, Deputy Storts grabbed Plaintiff by his face and "whipped him around to put the cuffs on him." Norma Landis-Rooker Depo., J.A. at 323-24. After Plaintiff denounced the charge of obstruction as "bullshit," Deputy Storts "ran [Plaintiff's] face into the door and got his hands back to cuff him." *Id.* at 324. Thereafter, Plaintiff "went still" and looked "limp," like a "rag doll," as Deputy Storts took him to the cruiser. *Id.* When Deputy Storts noticed a cuff had come off at the cruiser, "he flipped [Plaintiff] over, took him down to the ground and [Plaintiff] was laying with his arms out superman style." *Id.* at 327. At that point Plaintiff told Rooker, "look, I'm not resisting, they say I'm resisting but I'm not resisting and you're my witness." *Id.*

Nutter, present for the ride-along, testified that Plaintiff was "throwing his shoulders around" and yelling as Storts attempted to handcuff him on the porch, but did not recall the incident at the cruiser. Shawn Nutter Depo. J.A. at 927, 929. Nutter stated that the confrontation "somehow" got to the gravel, where Plaintiff and Storts continued "scuffling" and, in Nutter's opinion, Plaintiff continued resisting. *Id.* at 929, 931. Although Nutter never saw Plaintiff's "face actually pushed down in the gravel," he conceded that when the paramedics arrived Plaintiff had bruises, dirt, and some scratches on his face. *Id.* at 922, 932.

On these facts, the district court ruled that Defendants were not entitled to qualified immunity on Plaintiff's excessive force claim. It reasoned:

> [G]enuine issues of material fact exist as to what transpired during Plaintiff's arrest. Plaintiff claims that he was being choked, that he was gasping for air, and that his face was beaten into the gravel driveway. In contrast, Deputy Storts testified that he had difficulty trying to re-cuff Plaintiff's loose hand and ended up in a scuffle on the driveway. According to Deputy Allen, who helped to re-cuff

Plaintiff, Deputy Storts used about fifty percent of his body weight on Plaintiff while on the driveway and it took both of them to recuff the Plaintiff. In short, the testimony reveals two very different versions of the arrest. Such issues must be resolved by a jury. If a jury credits Plaintiff's testimony that he was incapacitated yet choked and beaten into the gravel driveway, the jury could conclude that the Deputies acted unreasonably and violated Plaintiff's Fourth Amendment rights during the arrest on the evening in question. On the other hand, if a jury credits the Defendants' testimony, then Plaintiff's Fourth Amendment claim fails. Since there are genuine issues of material fact regarding the Plaintiff's arrest, the Defendants are not entitled to qualified immunity on Plaintiff's excessive force claim and summary judgment is inappropriate.

Op. and Order, J.A. at 1127-28 (internal citations omitted). The court conceded that Plaintiff's claim to have gone in and out of consciousness might "undercut [his] version of events," but held that "this remains for the jury to decide." *Id.* at 1128 n.9.

**III.**

Appellate jurisdiction is limited to "final decisions" of the district courts. 28 U.S.C. § 1291. An interlocutory appeal of a district court's denial of qualified immunity is thus properly before this panel only "to the extent that it turns on a question of law." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 309 (6th Cir. 2005); *see also Johnson v. Jones*, 515 U.S. 304, 319-20 (1995) ("[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.").

Given this standard, a defendant challenging a denial of qualified immunity on interlocutory appeal "must be willing to concede the facts as alleged by the plaintiff and discuss only the legal issues raised by the case." *LeMarbe v. Wisneski*, 266 F.3d 429, 435 (6th Cir. 2001). If a defendant

is not willing to do so, there is no jurisdiction. *McKenna v. City of Royal Oak*, 469 F.3d 559, 561 (6th Cir. 2006); *see also Sheets v. Mullins*, 287 F.3d 581, 585 (6th Cir. 2002) ("[I]t is well established that, for appellate jurisdiction to lie over an interlocutory appeal, a defendant seeking qualified immunity must be willing to concede to the facts as alleged by the plaintiff and discuss only the legal issues raised by the case.").

The Supreme Court created an exception to this standard where a district court's denial of qualified immunity turns on a disputed issue of material fact and one side's version of those facts is "blatantly contradicted" and "so utterly discredited by the record that no reasonable jury could believe it." *Scott v. Harris*, 127 S.Ct. 1769, 1776 (2007). However, *Scott*'s exception applies only to the "rare" case at the "outer limit" where a district court makes a "blatan[t] and demonstrabl[e] error." *Wysong v. City of Heath*, 260 Fed. App'x. 848, 853 (6th Cir. 2008) (quoting in part *Blaylock v. City of Philadelphia*, 504 F.3d 405, 414 (3d Cir. 2007)).

**IV.**

In challenging the district court's denial of summary judgment, Defendants implicitly[3] ask this panel to reconsider the district court's determination that a genuine issue of material fact exists as to whether excessive force was used during Plaintiff's arrest. As noted above, review of this factual determination is permissible only in the "rare" event of a blatant and demonstrable error in

---

[3]That is, the legal arguments that Defendants make rely on factual interpretations at odds with those made by the district court.

interpreting the facts by the district court. *Wysong*, 260 Fed. App'x. at 853. Absent such error, this court may not revisit the factual basis behind a denial of summary judgment.[4]

The district court concluded that, viewing the facts in the light most favorable to Plaintiff, there was a genuine issue of material fact on the issue of resistance and excessive force. Op. and Order, J.A. at 1127-28. Defendants argue that this was in error because there was insufficient evidence to support Plaintiff's claim that he was not resisting arrest — an interpretation of the facts expressly at odds with the District Court's statement of the factual dispute. *Id.* at 1128. Because Defendants do not concede the facts alleged by Plaintiff, the instant appeal is permissible only if the district court committed blatant and demonstrable error in by deferring to Plaintiff's account below. The answer to this question can be found by reference to those cases in which courts *did* find district courts guilty of such error.

In *Scott v. Harris*, the plaintiff sued a police officer for excessive force during a high-speed car chase based on his use of a Precision Intervention Technique (PIT), which causes the fleeing vehicle to spin out of control. 127 S.Ct. at 1773. The officer moved for summary judgment, asserting qualified immunity because the plaintiff's attempted high-speed escape placed pedestrians and other motorists in grave danger. The plaintiff responded that "there was little, if any, actual threat to pedestrians or other motorists, as the roads were mostly empty." *Id.* at 1775. Viewing the facts in the light most favorable to the plaintiff, the district court denied qualified immunity due to the dispute over a genuine issue of material fact, *i.e.*, the degree of threat to public safety.

---

[4]To be sure, reviewing to determine the existence (or not) of a blatant and demonstrable error requires some measure of considering the facts before the district court.

Although on summary judgment courts must draw reasonable inferences "in the light most favorable to the [nonmoving] party," *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), there was "an added wrinkle in this case" — the existence of video from the police cruiser's dashboard camera which recorded the chase. *Scott*, 127 S.Ct. at 1775. The video depicted "a Hollywood-style car chase of the most frightening sort," and showed the plaintiff "swerve around more than a dozen other cars" and "force cars traveling in both directions to their respective shoulders to avoid being hit." *Id.* at 1775-76. The Supreme Court reversed the denial of qualified immunity, holding that courts need not defer to the plaintiff's version of events if "blatantly contradicted" and "utterly discredited by the record" such that "no reasonable jury could believe it." *Id.* at 1776.

The Sixth Circuit has twice relied on *Scott* to overturn denials of qualified immunity in excessive force cases. *See Wysong*, 260 Fed. App'x. 848; *Marvin v. City of Taylor*, 509 F.3d 234 (6th Cir. 2007).

In *Wysong*, the plaintiff, a diabetic, admitted that he had no memory of his arrest due to a blackout caused by low blood sugar. *Wysong*, 260 Fed. App'x. at 849, 853. Despite that admission, the district court denied qualified immunity based on the plaintiff's otherwise unsupported claim that he was not resisting arrest. On appeal, this court found that because the plaintiff "had *no conscious memory* of what happened and *could not affirm or deny any of his actions*" during the arrest and "presented no other witnesses or physical evidence to confirm his story," there were no *facts* in dispute and the denial of qualified immunity was thus inappropriate. *Id.* at 850-51 (emphasis in original).

In *Marvin*, the plaintiff's account of his arrest was contradicted by video of the incident from the police cruiser and inside the jail. *Marvin*, 509 F.3d at 245-51. Ruling on qualified immunity before *Scott*, the district court denied qualified immunity despite the discrepancy. During the appeal, the Supreme Court decided *Scott* and, accordingly, this court reversed the district court's decision because the video made it impossible to credit the plaintiff's verison of the events. *Id.*

The present case does not fit the mold of *Scott*, *Wysong*, or *Marvin*. Unlike *Scott* and *Marvin*, there is no *irrefutable* evidence (such as video) establishing that Plaintiff resisted arrest at the cruiser and on the ground. And unlike *Wysong*, Plaintiff was not unconscious throughout his arrest. Rather, he remained conscious through much of it and testified only as to what he actually remembered. *See* Steven E. Landis Depo., J.A. at 114-19. In particular, he *specifically* recalled being choked against the cruiser and, once on the ground, having his face smashed into the gravel — all while not resisting. *Id.* Although Plaintiff's testimony is disputed by that of the arresting officer (Deputy Storts) and, to a lesser extent, by that of an onlooker (Nutter), it cannot be described as "blatantly contradicted" and "utterly discredited" so that "no reasonable jury could believe it." *Scott*, 127 S.Ct. at 1776. Moreover, Plaintiff, also unlike Wysong, has the benefit of an additional onlooker (Rooker) whose testimony contradicts the arresting officer's account and corroborates portions of Plaintiff's version of events. Therefore, the district court made no blatant and demonstrable error in finding a disputed issue of material fact, and this court is without jurisdiction to hear the instant appeal. *See Wysong*, 260 Fed. App'x. at 853.

**V.**

For the foregoing reasons, Plaintiff's motion to dismiss Defendants' interlocutory appeal for lack of jurisdiction is granted and Defendants' appeal is hereby dismissed.