NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0128n.06

No. 13-5708

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 13, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| Nazareth Brown | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| David A. Weber | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: ROGERS, McKEAGUE, and WHITE, Circuit Judges.

ROGERS, Circuit Judge.  Nazareth Brown sued Sergeant David Weber under 42 U.S.C. § 1983 for the alleged use of excessive force when Weber arrested Brown at a local Hardee's restaurant.  Weber appeals the district court's denial of summary judgment on the basis of qualified immunity.  Weber and another police officer were dispatched to Hardee's after two 911 callers reported an apparently intoxicated man at the restaurant "falling everywhere," removing his shirt, and using foul language.  The man, Nazareth Brown, had climbed onto the counter at Hardee's and, when the police arrived, was nonresponsive and sitting in a fetal position with his shirt over his head.  Weber swiftly arrested Brown, and in the process tased Brown three times within sixteen seconds.  Under the facts assumed by the district court, Brown was not armed or

threatening, was not committing a crime, and was not fleeing from the officers. Under these facts, he had a clearly established constitutional right to be free from the repeated use of the taser. Thus the district court was correct in denying Weber's motion for summary judgment on the basis of qualified immunity.

On the afternoon of December 22, 2010, two restaurant patrons called 911, reporting that an apparently intoxicated man was creating a disturbance at the local Hardee's. The first caller was hiding in the Hardee's restroom with her child and recounted that the man had fallen over chairs, dropped his coffee, and was stumbling around and using foul language. The surveillance video reveals that Brown also attempted to drink from the soda fountain and climbed over the counter to the employees-only area of the restaurant.

Nazareth Brown is a type 1 insulin-dependent diabetic. Brown asserts that the 911 caller "misunderstood the nature of his condition," and that he was experiencing very low blood sugar levels. Brown has no memory or recollection of what happened at Hardee's independent of the surveillance video.

Sergeant Weber and Deputy Jeremy Pratt, of the Decatur County Sheriff's Department, arrived at the scene within several minutes of the 911 calls. When they arrived, Brown was seated on the counter pulling his shirt over his head, and an employee was imploring him to get off of the counter. Brown did not respond or move when Weber and Pratt spoke to him, and Brown tried to take his shirt off. Weber quickly walked behind the counter with his taser and pulled Brown by his left arm off of the counter, and immediately thereafter discharged the taser into Brown's back. Weber claims that he grabbed Brown's arm, and Brown suddenly jumped

off the counter, landed on his feet, raised his fists, and stood in a "fighting stance." Weber states that only after Brown assumed the fighting stance did Weber fire the taser on Brown. The surveillance video shows Brown in a reactive position after being pulled off of the counter, and he appears to be regaining his footing in the moment prior to being tased, which caused him to fall to the ground.

The first taser cycle lasted five seconds. The taser was employed in dart mode, which caused Brown to lose control of his muscular function through neuromuscular incapacitation. Brown fell to the floor, face down, and began to state that his blood sugar was low. Weber and Pratt stated that, while Brown was on the floor, he was combative and would not remove his arms from underneath his body to be placed in handcuffs. Brown was then tased a second time, also for a five second taser cycle. A moment later, Weber's taser discharged a third time, for a four second taser cycle. The parties dispute whether Brown was capable of complying with Pratt's attempt to handcuff him between the taser cycles, but it is undisputed that there was only one second in between each of the three instances the taser was discharged. The officers were trained to try to allow suspects to at least be compliant before firing a second taser shock.

After the tasing, Weber and Pratt handcuffed Brown, lifted him, and took him to the parking lot, where he was placed on the ground and in leg shackles. Brown asserts that the officers forcibly placed him face down in a police car. Next, Brown was transported to the hospital, where he tested negative for all drugs and his blood sugar level was found to be less than 34 mg/dL, approximately one-half (½) of the minimum of the normal range, a dangerously

low level. Brown was later released from the hospital to his parents' care and was not charged with any criminal offense.

Brown asserted that throughout the encounter he was "obviously" emotionally disturbed and disabled with diabetes, which required medical attention for diabetic hypoglycemia/shock as well as special police procedures and tactics, which Weber and Pratt allegedly failed to use. Brown also asserted that during the interaction he was "continuously stating his blood sugar was low." Brown was carrying his Tennessee driver's licence, which bears a medical alert emblem in the top left corner and notes a Restriction Code Fourteen (14), identified on the back of his license as "insulin dependent diabetic." Brown argued that this indicator should have alerted the police of his disability, but that Weber and Pratt failed to notice it. Brown stated that he did not display any weapons or pose a "substantial" threat to anyone at any time, and committed no criminal offense in the officers' presence. Brown believes that his behavior was typical of an individual suffering from diabetic hypoglycemia.

Brown brought suit under 42 U.S.C. § 1983 and 1988, against Weber and Pratt in their individual and official capacities, as well as Decatur County, Tennessee, which was their employer. Brown alleged that Sergeant Weber used excessive force against him, resulting in an unreasonable seizure under the Fourth Amendment.[1] Brown asserted that his hypoglycemia caused his behavior at the restaurant, and that Weber and Pratt's use of force was allegedly done "at least in part" because of Brown's disability and state as an emotionally disturbed person.

---

[1] Brown also asserted violations of the Fourteenth Amendment, but that claim was dismissed by the district court.

Brown also alleged that he was seized without probable cause, reasonable suspicion, or other legal right, that his seizure lasted an excessive amount of time, and that the seizure was conducted unreasonably. Brown sought compensatory and punitive damages and attorneys fees, and asserted state law claims of assault, battery, false arrest, and false imprisonment.

Weber, along with co-defendant Deputy Jeremy Pratt, asserted qualified immunity as a defense in his answer to Brown's complaint. Weber and his co-defendants filed a motion for summary judgment, which the district court granted in part and denied in part. The court dismissed Brown's claim against Pratt and certain claims against Decatur County, but denied summary judgment as to Brown's excessive force claim against Weber. The court determined that under the version of the facts posited by Brown, he was tased three times even though he was not actively resisting, and that if a jury accepted this account, it could reasonably conclude that Weber's use of the taser amounted to force that was excessive under clearly established law in December 2010. Weber appealed.

For purposes of this interlocutory appeal, we assume that Brown was not actively resisting arrest. The district court determined that there was a genuine issue of material fact that Brown did not actively resist arrest, and the Sixth Circuit is required by the limitations on interlocutory appeals of qualified immunity denials to accept the district court's finding that a genuine dispute of material fact existed, in the absence of incontrovertible evidence that it did not. *See Romo v. Largen*, 723 F.3d 670, 674, 675 n. 2 (6th Cir. 2013). No incontrovertible evidence exists to prove that Brown actively resisted arrest, because the surveillance video is ambiguous as to whether Brown took a "fighting stance" after being pulled off of the counter,

and a reasonable jury could conclude that he did not. Indeed, Brown's movements when coming off the counter may have been merely an involuntary reaction to being tased. If one party's version of the facts is "blatantly contracted by the record, s[uch] that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, because Brown's version of the story is not blatantly contradicted by the record, we accept the district court's determination that a genuine issue of material fact exists as to whether Brown actively resisted arrest by taking a "fighting stance." *See Romo*, 723 F.3d at 675.

The district court was correct in denying summary judgment on the basis of qualified immunity in Brown's excessive force claim because, assuming Brown did not actively resist arrest, Weber's repeated use of a taser amounted to force that was excessive under clearly established law in December 2010. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This affirmative defense applies broadly, covering government officials so long as "their decision was *reasonable,* even if mistaken." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995) (quoting *Castro v. United States,* 34 F.3d 106, 112 (2d Cir.1994)). Because Weber asserted qualified immunity, the burden shifted to the plaintiff, Brown, to demonstrate that he is not entitled to qualified immunity by alleging facts sufficient to show that Weber's act violated clearly established law at the time

that it was committed. *Simmonds v. Genesee Cnty.,* 682 F.3d 438, 444 (6th Cir.2012)*; see also Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir.1991).

Weber's use of a taser was unreasonable, and thus excessive, under the circumstances as we take them on this appeal. In evaluating the reasonableness of a particular use of force, courts consider "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2003) (quoting *Graham v. Connor*, 490 U.S. 386, 396, (1989)). "[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Here, Brown was not arrested for committing a crime and was never charged with a crime. Brown posed little to no immediate threat to the safety of the officers or others because restaurant patrons had fled the vicinity and he was unarmed, not making verbal threats, and sitting on the counter in the fetal position with his shirt pulled over his head. In addition, Brown was not attempting to evade arrest by flight, and for purposes of this appeal we assume he was not actively resisting arrest. The excessive force analysis requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). "There is no government interest in striking someone who is neither resisting nor trying to flee." *Wysong v. City of Heath*, 260 F.App'x 848, 855 (6th Cir. 2008).

In *Griffith v. Coburn*, this court held that a vascular neck restraint, which is equivalent to a taser in severity of force, was excessive when the suspect was unarmed and non-threatening, but passively resisted arrest by putting his arm behind his back and not cooperating with the officer's commands. 473 F.3d 650, 657, 658–60 (6th Cir. 2007); *see also Shreve v. Jessamine County Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006). However, "[i]f a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (holding there was no Fourth Amendment violation where an officer used a taser to subdue a suspect who had to be wrestled to the ground and continued to resist arrest by kicking, screaming, and refusing to be handcuffed). This court has also held that tasing a suspect is not excessive force when the suspect refuses to move his hands from under his body so that officers could handcuff him. *See Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 96 (6th Cir. 2012) (tasing a suicidal suspect once was not excessive force where the suspect spoke of provoking officers to use deadly force and ran away flailing his arms violently). In contrast, Brown was unarmed, made no verbal threats, and did not evade arrest.

Moreover, the second and third taser charges are even less justifiable under the *Graham v. Connor* analysis. Like the plaintiff in *Kijowski v. City of Niles*, who was dragged out of his truck, thrown to the ground, and tased immediately, here Brown was likely not resisting arrest between taser deployments because "[t]here simply was no time" between tasings for Brown to comply with the officers' directions. *See Kijowski v. City of Niles*, 372 F. App'x 595, 599 (6th Cir. 2010)*; see also Roberts v. Manigold*, 240 F. App'x 675, 676, 678 (6th Cir. 2007) (tasing not

justifiable where plaintiff was chased by police in connection with a domestic violence call, pinned to the ground, and tased repeatedly in a very short period of time). Therefore, because Brown was not actively resisting, a jury could find that Weber's use of force was excessive. This legal conclusion is supported by negative inference from defendant's repeated statement of the issue as whether the tasing was required by Brown's "active resistance." *See* Appellant's Br. at 2, 6, 7, 11–12, 14, 16–19, 24; Appellant's Rep. Br. at 3, 5–6.

Brown alleged facts sufficient to show that Weber discharged a taser three times within sixteen seconds on Brown, who was noncompliant but not actively resisting arrest. Under this account, cabined by the incontrovertible facts shown by the video, Weber's use of the taser amounted to force that was excessive under clearly established law in December 2010. Accordingly, we affirm the district court's judgment denying Weber qualified immunity.