NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0263n.06

**No. 10-6216**

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOHN JONES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | **Apr 25, 2011** |
| v. | ) | LEONARD GREEN, Clerk |
| | ) | |
| EDWARD YANCY, Officer, Individually and as an | ) | |
| Officer of the City of Memphis Police Department; | ) | |
| JERRY WALKER, Officer, Individually and as an | ) | |
| Officer of the City of Memphis Police Department, | ) | |
| | ) | ON APPEAL FROM THE |
| Defendants-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| and | ) | DISTRICT OF TENNESSEE |
| | ) | |
| LARRY A. GODWIN, Individually and in his | ) | |
| capacity as Police Director for the City of | ) | |
| Memphis Police Department; CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

BEFORE:     COLE and STRANCH, Circuit Judges; ZATKOFF, District Judge.[*]

**JANE B. STRANCH, Circuit Judge.** Defendants-Appellants Officers Edward Yancy and

Jerry Walker appeal the district court's denial of their motion for summary judgment on claims that

they used excessive force in arresting Plaintiff-Appellee John Jones. Because the question of

qualified immunity presented by the officers' interlocutory appeal depends entirely on a disputed

version of the facts, we have no jurisdiction to entertain it. Accordingly, the appeal is **DISMISSED**.

---

[*]The Honorable Lawrence P. Zatkoff, Senior United States District Judge for the Eastern
District of Michigan, sitting by designation.

**BACKGROUND**

On the evening of April 8, 2006, John Jones was involved in a motor vehicle accident in Memphis, Tennessee. While Jones was driving on Prescott Street, another vehicle made a wide turn into his lane, forcing him to run off the roadway and strike a utility pole. Jones did not remain at the scene of the accident. Darron Easley, a nearby resident who heard the crash, gave Jones a ride to Jones' home so that he could call his brother (the owner of the vehicle Jones was driving) and get money to have the vehicle towed. Jones did not report the accident to the Memphis Police Department. By the time Jones returned to the scene of the accident, however, a police service technician had arrived. The technician asked Jones for his driver's license, which Jones could not locate.

The parties vigorously dispute what happened next. Jones testified in a deposition that shortly after he returned to the scene of the accident, Officers Yancy and Walker arrived and asked him for his driver's license. After Jones unsuccessfully searched the vehicle for the license and informed the officers of his inability to locate it, the officers placed Jones in handcuffs. Jones testified that he did not resist arrest at any time. Nonetheless, Jones claims that the officers "pepper sprayed" and repeatedly beat him across the head and back. R92-10 at 36–37, 44. He also testified that the officers "r[ode] [him] down to the ground" on his knees, despite being told that Jones could not get down on his knees due to a preexisting injury. R92-10 at 96–97. Jones was then placed in the back of a police car and taken away. He claims to have suffered multiple injuries from the incident, including a broken finger and a broken rib.

2

Easley, who witnessed the incident, offered deposition testimony largely supporting Jones' version of events. He testified that Jones "wasn't disorderly," R104-2 at 17, that he never saw Jones try to strike the police officers, and that the police "[s]lammed him down" on the trunk of the police car and "was very abusive," R104-2 at 38–39. An affidavit executed by Easley shortly after the incident specifically alleged that he saw one of the officers "slam[] him down" on the trunk of the police car "about two times" and hold "Jones' arm or hand in a position where [Easley] believed they were going to break it." R86-6 at 2.

The officers tell a different story. They claim that Jones refused to sign a traffic ticket, requiring them to place him under arrest. Yancy testified that Jones told them "f--- you, I ain't got to give you s---." R92-11 at 70. As they attempted to arrest Jones, the officers claim that Jones resisted, "trying to pull away" and "get away." R92-12 at 62. Yancy testified that Jones "pulled loose [and] took a swing at Officer Walker" and that they all "start[ed] fighting" as the officers tried to get Jones in the police car. R92-11 at 70. After being unable to subdue him, Officer Walker used pepper spray on Jones. Both officers testified that the pepper spray was used before Jones was handcuffed. Although Walker claimed that they never used physical force on Jones, and disputed the allegation that they slammed Jones on the back of the police car, Yancy seemingly acknowledged slamming Jones on the trunk of the car in order to get him handcuffed.

On April 3, 2007, Jones filed this suit in the Western District of Tennessee, asserting a number of claims relating to the incident. As relevant here, Jones brought a claim under 42 U.S.C. § 1983 against Officers Yancy and Walker, alleging that they used excessive force against him in

violation of the Fourth Amendment. The officers moved for summary judgment on February 1, 2010, claiming entitlement to qualified immunity. On August 27, the district court granted the officers' motion for summary judgment in part and denied it in part. The court granted the officers' motion as to Jones' claims that the officers violated his Fourteenth Amendment rights and lacked probable cause to arrest him. The court, however, denied the officers' motion as to Jones' excessive-force claim, citing case law establishing that the unnecessary use of force on a non-resisting individual, particularly pepper spray, violates the Fourth Amendment. The court summarized the "diametrically opposed versions of what occurred on April 8, 2006," R118 at 16, and concluded that, "taking the view of the facts most favorable to the Plaintiff, Jones was the victim of an unprovoked attack that resulted in his being pepper sprayed and slammed into the patrol car well after he was in handcuffs," R118 at 18. In light of this factual dispute, the court held that the officers were not entitled to summary judgment on qualified immunity grounds.

On September 23, the officers filed this timely interlocutory appeal.

## **ANALYSIS**

We begin—and end—our analysis by considering whether we have jurisdiction to entertain this appeal. The jurisdiction of this Court under 28 U.S.C. § 1291 generally extends only to "appeals from . . . final decisions of the district courts." Consequently, interlocutory orders denying summary judgment usually do not satisfy this jurisdictional requirement. *Ortiz v. Jordan*, -- U.S. --, 131 S. Ct. 884, 891 (2011).

A "limited exception" exists, however, for certain denials of summary judgment on qualified immunity grounds. *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985)). As the Supreme Court explained in *Johnson v. Jones*, 515 U.S. 304 (1995), we have jurisdiction over appeals from denials of qualified immunity to the extent they raise "purely legal issue[s]," such as what law was "clearly established" at the time the defendant allegedly acted. *Id.* at 313. We lack jurisdiction, however, to consider "a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Id.* at 319. "Under *Johnson*, therefore, a determination that a given set of facts violates clearly established law is reviewable, while a determination that an issue of fact is 'genuine' is unreviewable." *See v. City of Elyria*, 502 F.3d 484, 490 (6th Cir. 2007).

As Jones correctly points out, the officers' appeal presents no pure legal issue for review. The officers do not argue that the facts as alleged by Jones fail to establish a violation of clearly established constitutional law. Instead, the officers' appeal is based entirely on their argument that "the district court should have accepted the Officers' version of the events and granted their Motion for Summary Judgment." Appellants' Br. at 8–9. This is precisely the type of interlocutory appeal—challenging the factual basis for the district court's finding of a genuine issue of material fact—over which we have no jurisdiction under *Johnson*.

The officers contend that the Supreme Court's post-*Johnson* decision in *Scott v. Harris*, 550 U.S. 372 (2007), grants us jurisdiction to consider this appeal. In *Scott*, the Supreme Court held that a district court should not view the facts in the light most favorable to the nonmoving party for

purposes of ruling on a motion for summary judgment if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Id.* at 380. The Supreme Court concluded that the district court erred in that case by adopting the plaintiff's version of events because it was "quite clearly contradict[ed]" and "utterly discredited" by a videotape of the incident. *Id.* at 378, 380.

Although we have interpreted *Scott* to permit us to exercise jurisdiction over interlocutory appeals from denials of summary judgment in those "rare" cases where the district court makes a "blatan[t] and demonstrabl[e] error" in finding an issue of material fact, *Wysong v. City of Heath*, 260 F. App'x 848, 853–54 (6th Cir. 2008), the present case falls well short of satisfying this narrow exception.

The officers argue that the district court committed "blatan[t] and demonstrabl[e] error" because "Jones failed to offer any significant, probative evidence to support the allegation that he was pepper sprayed after he was handcuffed and compliant." Appellants' Br. at 11. We are not persuaded. Jones repeatedly testified that the officers pepper sprayed and beat him despite the fact that he put up no physical resistance to arrest. Much of Jones' testimony was corroborated by Easley, an unrelated witness, who testified that, although Jones "wasn't disorderly," R104-2 at 17, and never tried to strike the police officers, the officers "[s]lammed him down" on the trunk of the police car and were "very abusive," R104-2 at 37–39. Furthermore, Jones specifically testified that he "believe[d]" the officers placed him in handcuffs before spraying him with pepper spray. R92-10 at 36. And while Jones acknowledged that he was "not sure" about the timing of the handcuffing,

R92-10 at 36, that acknowledgment hardly establishes that the district court committed a "blatan[t] and demonstrabl[e] error" in finding an issue of material fact as to whether the officers acted with excessive force, particularly given the other testimony indicating that Jones was compliant at the time of the officers' alleged actions. "Absent such error, this court may not revisit the factual basis behind a denial of summary judgment." *Landis v. Phalen*, 297 F. App'x 400, 404 (6th Cir. 2008). The disputed issues of material fact in this case are for a jury to decide, not for a court.

## CONCLUSION

On this record, the question of qualified immunity depends entirely on the district court's determination that the record sets forth a genuine issue of material fact. Because we lack jurisdiction to review that factual determination, we **DISMISS** the appeal.