**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0572n.06

**No. 11-4441**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jun 12, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| RAFAEL CORREA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JAMES J. SIMONE, Jr., | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

Before:  MARTIN and  ROGERS, Circuit Judges; TARNOW, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge.  Rafael Correa sued James J. Simone, Jr., a police officer in the Cleveland Police Department, after Simone tasered him during an arrest.  Correa claimed Simone's use of the taser constituted excessive force in violation of his constitutional rights.  He also raised six other claims, including assault and battery and false arrest.  The district court denied Simone's summary judgment motion on the excessive force, assault and battery, and false arrest claims.  Simone appeals, arguing that as a matter of law he deserves immunity with regard to those claims.  We **AFFIRM** the district court's denial of summary judgment.

I.

---

[*]The Honorable Arthur J. Tarnow, United States District Judges for the Eastern District of Michigan, sitting by designation.

No. 11-4441
Correa v. Simone

On the evening of May 15, 2010, Officer Simone received a radio broadcast of a disturbance at Bounce Bar on Detroit Avenue in Cleveland, Ohio. The broadcast gave a description of a suspect, who had left the bar, and said the suspect was a man with a gun. Simone, alone in the patrol car, responded to the broadcast by driving to the area, where he encountered Correa, who matched the suspect's physical description. Simone stopped his car facing the suspect so his DashCam could record the encounter; however, he failed to turn on the sound (so the video contained no audio). At this point Simone was alone with the suspect.

According to Simone, he stopped Correa at gunpoint, asked him to get on his knees and then lie face down on the ground. Instead of responding to the commands, Correa took off his backpack and put his shirt, which was around his neck, on the ground. He then dropped to one knee and then the other, but he would not drop to the ground. After about forty-five seconds, Simone tasered Correa. Simone claims that he was trying to get Correa on the ground so he could check for a weapon. According to Simone, two officers arrived immediately after Simone tasered Correa, and Simone later found that Correa did not have a gun. After talking with the victim from Bounce Bar, Simone arrested Correa for: assault, because he had allegedly spit in the face of a woman at the bar; obstruction, because he failed to comply with commands; and disorderly conduct, because Simone believed Correa was in an impaired condition.

Correa contests Simone's version of the facts. He says that Officer Simone arrived in his police cruiser, got out of the car and pointed a gun at him, but Correa did not know why he was being stopped. Simone asked Correa to stop, take off his backpack and put it on the ground, get on his knees, take off his shirt, and put his hands up. Correa went down on one knee and then to both

- 2 -

knees. Correa claims that he responded to all of Simone's commands. Correa put his hands up, and Simone tasered him. Correa claims that he had not assaulted a woman at Bounce Bar.

The district court found that the DashCam showed Correa putting his hands up, taking off his backpack, dropping down on one knee, and then two knees, while Simone approached him with his gun drawn. Correa then put his hands on his thighs, took his shirt off, and puts one or both hands up (in the video Simone partially blocks the view of Correa somewhat). Simone then tasered Correa. Officers from another police car were exiting their vehicle while Simone tasered Correa. The district court found there were questions of fact about whether the Correa was complying with Simone's verbal orders.

Correa brought seven claims against Simone and the City of Cleveland. The district court found that qualified immunity protected Simone from suit regarding all but three claims—Correa's section-1983 claim of excessive force, his state law assault and battery claims, and his section-1983 and state-law claims of false and wrongful arrest. Simone appeals, arguing that as a matter of law the district court erred in denying him immunity.

II.

Correa argues that this Court does not have jurisdiction to review the district court's summary-judgment determination because Simone raises no colorable issue of law for any of the claims.

A denial of qualified immunity that turns on an issue of law is "an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012). A defendant, "entitled to

invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). However, to the extent that a defendant's appeal raises a question of law, we can exercise jurisdiction "regardless of the district court's reasons for denying qualified immunity." *Austin v. Redford Twp. Police Dept.*, 690 F.3d 490, 496 (6th Cir. 2012) (emphasis omitted) (quoting *Williams v. Mehra*, 186 F.3d 685, 689–90 (6th Cir. 1999) (en banc) (internal quotation marks omitted)).

Here, while the district court decision primarily rested on finding a genuine issue of material fact, Simone raises a question of law on appeal. Therefore, we have jurisdiction over Simone's interlocutory appeal.

III.

This Court reviews a denial of summary judgment on qualified immunity grounds de novo. *Kijowski v. City of Niles*, 372 F. App'x 595, 597 (6th Cir. 2010). To determine whether qualified immunity applies to excessive force claims, this Court uses a two-step analysis. First, we look at "whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated," and second, we determine "whether that right was clearly established" at the time of the encounter. *Campbell v. City of Springboro, Ohio*, 700 F.3d. 779, 786 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (parallel citations omitted); *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2008)). We can consider either step first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A. Violation of a Constitutional Right.

The Fourth Amendment prohibits the use of excessive force by an arresting officer. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This Court must apply an objective reasonableness test, considering the reasonableness of the use of force from the "perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Id*. at 396. We must look at the totality of the circumstances, including three factors: first, "the severity of the crime at issue"; second, "whether the suspect poses an immediate threat to the safety of the officers or others," and third, "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The test is "fact specific, not mechanical[.]" *Wysong v. City of Heath*, 260 F. App'x 848, 854 (6th Cir. 2008). Simone argues that the district court correctly found that the first factor, the severity of the crime, weighed in his favor. He further concedes that, the third factor, whether Correa was resisting or attempting to evade arrest, is in Correa's favor because Correa was not resisting. We agree with the district court's determination of the first and third factors. The crime was severe enough for the first factor to weigh in Simone's favor because the broadcast described an assault by a man with a firearm. The third factor is in Correa's favor because he was not resisting or attempting to evade arrest by flight, he was kneeling with his hands raised.

However, Simone argues that the district court erred when considering the second factor, whether the suspect posed an immediate threat to the safety of the officers or others. Simone argues that even if Correa was not resisting and made no outwardly threatening or evasive movement, the fact that Correa potentially had a gun means he posed an immediate threat to the officers' safety. This Court has found that defendants pose no immediate threat where they are not resisting and have their hands up in the air. *Thomas v. Plummer*, 489 F. App'x 116, 126 (6th Cir. 2012). We have

further found that a defendant pose no harm where the suspect previously reacted violently but was under control at the time of tasing. *Landis v. Baker,* 297 Fed. App'x. 453 (6th Cir. 2008). Correa did not pose an immediate threat to the safety of the officer or others because, while he allegedly had a gun, at the time Simone used the taser, Correa's hands were in the air and he was not resisting. We conclude that the second factor is in Correa's favor and that the district court did not err in finding that a reasonable jury could find that Officer Simone's actions were unreasonable.

B. Clearly Established Right.

Having found a constitutional violation, we must next consider whether "the right was clearly established at the time of the alleged violation." *Campbell*, 700 F.3d at 786 (citing *Parsons v. City of Pontiac*, 533 F.3d 492, 500 (6th Cir. 2003)). A right is clearly established if "[t]he contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wheeler v. City of Lansing,* 660 F.3d 931, 938 (6th Cir. 2011) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). However, this does not mean that this Court must have considered the exact factual pattern—"'there need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional.'" *Grawey v. Drury*, 567 F.3d 302, 313–14 (6th Cir. 2009) (quoting *Cummings v. City of Akron,* 418 F.3d 676, 687 (6th Cir. 2005)). Here, the question is whether, as of May 15, 2010, it was clearly established that tasing a suspect who was potentially armed with a gun, but who offered no resistance to arrest, violated the suspect's Fourth Amendment rights. Simone concedes, for purposes of appeal, that Correa was

neither actively resisting nor attempting to evade by flight, but argues that a suspect with a firearm did not have a clearly established right to be free from a single taser shock.

Looking at cases before May 2010, this Court's analysis of whether a defendant's right to be free from a taser shock was clearly established can be split into two lines of cases. First, this Court has generally found no clearly-established right where the suspect is actively resisting arrest, which can include physically resisting, fleeing the scene despite police orders, and not responding to orders to move. *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (finding it was not clearly established in May 2007 that using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force); *Caie v. W. Bloomfield Twp.,* 485 F. App'x 92, 95–96 (6th Cir. 2012) (right not clearly established in 2009 when suspect refused to follow police orders and move his arms from under his body); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (holding no clearly established right in 2008, because flight is a form of resistance); *Williams v. Ingham,* 373 F. App'x 542, 548 (6th Cir. 2010) (officers acted reasonably by tasing suspect who would not move his hands from under his body); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (finding qualified immunity for police officers who tased a potentially homicidal man who stood a few feet away with knives in each of his hands).

In a second set of cases, this Court has found that plaintiffs' right to be free from a taser shock is clearly established where they have done nothing to resist arrest or are already detained. For example, in *Thomas v. Plummer*, the suspect was repeatedly told to get down on the ground. *Thomas*, 489 F. App'x at 118. When the suspect responded by only dropping to her knees with her hands in the air, the police tased her. *Id.* This Court held that the suspect "posed absolutely no

threat" as she hadn't offered any "active resistance." *Id.* at 126. Similarly in *Kijowski v. City of Niles*, we found the right to be free from excessive force clearly established when police dragged an unresisting man from his truck and immediately tasered him. *Kijowski*, 372 F. App'x at 601. In some cases, tasing a previously resistant and violent suspect who no longer poses a threat to the police officers also violates clearly established law. *Landis*, 297 F. App'x at 461 (finding that where the defendant released the police officer and walked into the woods there was "no longer a threat to any of the officers" because the defendant was "not belligerent or verbally resistant" and did not have a weapon).

Simone's argument is that the law regarding tasing a non-resistant but possibly armed suspect was not clearly established because none of our cases has dealt specifically with a suspect who was armed with a firearm. We disagree. As noted above, this Court's precedent has emphasized the concept of resistance when considering whether an officer's conduct violates established law. As we noted in *Wysong*, 260 F. App'x at 856, "the right to be free from physical force when one is not resisting the police is a clearly established right." The absence of case law specifically addressing gun possession does not bear on whether the law is clearly established. The precedent in this Circuit clearly holds that a police officer must encounter some level of resistance by the defendant to justify using a taser. The mere possession of a gun is not, in and of itself, resistance unless coupled with something more, such as a physical or verbal action.[1] Holding otherwise would mean ignoring a significant amount of precedent establishing the importance of a defendant's resistance to an

---

[1] The dissent only refers to Correa "not actively resisting arrest," it does not mention that Correa had his hands in the air. That is, he was submissive.

officer's calculation of whether to use his or her taser. Using a taser on a potentially armed suspect who is complying with all officer commands and not resisting violated clearly established law as of May 2010.

IV.

With respect to Correa's state assault and battery claim, Simone argues that he should be immune under Ohio Revised Code section 2744.03. Ohio Revised Code section 2744.03 provides immunity to a political subdivision employee who acts within the course of his scope and duties unless "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" Ohio Rev. Code Ann. § 2744.03(A)(6)(b) (West 2013). Simone argues that the facts show he did not act with any reckless or malicious intent. The district court found that there were genuine issues of fact as to whether Simone acted recklessly or with malicious intent in his encounter with Correa and the court denied summary judgment.

"Ohio courts have held that summary judgment on state-law immunity is improper where fact questions remain." *Cline v. Myers*, No. 10-4415, 2012 WL 3553490, at *5 (6th Cir. Aug. 17, 2012) (citing *Sampson v. Cuyahoga Metro. Hous. Auth.,* 935 N.E.2d 98, 107 (Ohio Ct. App. 2010)). Furthermore, Ohio courts have noted that issues of "wanton misconduct [are] normally a jury question." *Fabrey v. McDonald Village Police Dept.*, 639 N.E.2d 31, 35 (Ohio 1994). We do not have jurisdiction to consider the factual questions surrounding immunity. *Jones*, 515 U.S. at 319–20. The district court denied summary judgment because of outstanding factual questions and we affirm.

V.

Correa brought a claim of false arrest under federal and state law. The district court denied Simone's summary-judgment motion, holding that Simone did not have probable cause to arrest Correa for assault based on the information he had at the time.

To succeed on a claim of false arrest, a plaintiff must show that the officer lacked probable cause to arrest him. *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011). Simone argues that he had probable cause to arrest Correa because he knew that Correa had spit on the victim from Bounce Bar. While spitting on someone does not generally constitute assault in Ohio, Ohio courts have upheld a conviction for assault where a defendant, who had Hepatitis C, spit into an officer's mouth. *State v. Price,* 834 N.E.2d 847 (Ohio Ct. App. 2005); *State v. Bailey*, 615 N.E.2d 322, 324 (Ohio Ct. App. 1992) (finding a defendant spitting on an officer, without more, did not rise to the level of assault or attempted assault).

Simone argues that in denying immunity on Correa's state law false-arrest claim, the district court misread *Price* to require a police officer have knowledge that a defendant has a communicable disease in order to make an arrest. Simone says that such an interpretation would "render an officer powerless to arrest a person for spitting on someone else, absent a very specific and highly unlikely bit of prior knowledge about that individual that the police officer would then be required to personally know." The district court merely cited *Price* for its holding that a defendant who spits into an officers mouth while knowing he was infected with a communicable disease could be convicted of assault. *Price,* 834 N.E.2d at 849. The court then held that Simone did not have

probable cause to arrest Correa for allegedly spitting on someone because he had no information that Correa had Hepatitis C or any other disease.

An officer's "warrantless arrest is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). This Court determines whether an officer has probable cause by looking at the facts known to the officer at the time of the arrest. *United States v. Pearce,* 531 F.3d 374, 380–81 (6th Cir. 2008). Here, the record shows that the victim told Simone that Correa had spit on her, but that at the time of arrest Simone had no information about Correa having Hepatitis or any other communicable disease. Simone did not have probable cause to arrest Correa for assault.

Simone further argues he did not violate Correa's constitutional rights because *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), and *Virginia v. Moore*, 553 U.S. 164 (2008), support arresting Correa even if spitting is only a "minor criminal offense." However, *Atwater* and *Virginia v. Moore* were explicit in limiting their holdings to minor criminal offenses committed in the presence of a police officer. *Atwater*, 532 U.S. at 354 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *Moore*, 553 U.S. at 176 ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter Fourth Amendment protections."). We affirm the district court.

Regarding whether Simone had probable cause to arrest Correa for intoxication or obstruction of official business, the district court determined there were outstanding factual questions. As we may only review legal issues on review, we affirm the district court.

VI.

We **AFFIRM** the district court's judgment denial of summary judgment.

No. 11-4441
Correa v. Simone

ROGERS, Circuit Judge, dissenting. When Officer Simone apprehended Correa, he did not have fair warning that it was unconstitutional to tase a suspect who he believed possessed a gun, even if the suspect was not actively resisting arrest. The plaintiff points to no case in which a court disapproved of the use of a taser when a suspect was believed to possess a firearm, and qualified immunity therefore required summary judgment for Simone on the federal excessive force claim.