RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TY SHANABERG,

> *Plaintiff-Appellant*,

*v.*

LICKING COUNTY, OHIO, et al.,

> *Defendants-Appellees*.

No. 18-3916

───────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-01209—George C. Smith, District Judge.

Argued: June 27, 2019

Decided and Filed: August 23, 2019

Before: ROGERS, GRIFFIN, and NALBANDIAN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Adam M. Schwartz, HAVENS LIMITED, Columbus, Ohio, for Appellant. Stephanie L. Schoolcraft, FISHEL DOWNEY ALBRECHT RIEPENHOFF, LLP, New Albany, Ohio, for Appellees. **ON BRIEF:** Adam M. Schwartz, HAVENS LIMITED, Columbus, Ohio, for Appellant. Stephanie L. Schoolcraft, Daniel T. Downey, FISHEL DOWNEY ALBRECHT RIEPENHOFF, LLP, New Albany, Ohio, for Appellees.

GRIFFIN, J., delivered the opinion of the court in which ROGERS, J., joined. NALBANDIAN, J. (pp. 7–9), delivered a separate opinion concurring in the judgment.

---

**OPINION**

---

GRIFFIN, Circuit Judge.

A report of a drunk driver, a mistaken identity, and an aggressive refusal to comply with repeated commands to lie down led to Defendant Deputy Brian Stetson's tasing Plaintiff Ty Shanaberg. Shanaberg sued Stetson and others pursuant to 42 U.S.C. § 1983. The district court granted summary judgment in favor of Stetson based on qualified immunity and summary judgment in favor of the other defendants on other grounds. Plaintiff Shanaberg now appeals and we affirm.

I.

Early one winter morning in 2015, police received a report of a drunk driver. The caller provided the vehicle's license-plate number. When dispatch ran the plate, the database reported the vehicle as stolen. The suspect's name also came back: Brandon Scott Powell. Powell was allegedly "armed and dangerous."

Responding to this information, the Licking County Sheriff's Office sent three deputies after the suspected drunk driver. Using the caller's frequent updates on the vehicle's location, the deputies tracked it down in just a few minutes. They found it stopped on a dirt road with the driver standing outside.

The deputies told the driver to get on the ground. He promptly responded by dropping to his knees and putting his hands in the air. As the deputies got out of their cruisers and approached, Deputy Stetson instructed the driver to lie down on the ground. The driver yelled back that he would not comply and asked what he had done wrong. Stetson and the driver repeated the conversation—nine times in total. Each time, the driver became more belligerent. And, at one point, while officers were approaching, the driver reached toward his open truck door but returned his hands to the air after Stetson told him to do so. The driver refused every command to lie on the ground despite three warnings that they would tase him if he did not obey.

The confrontation ended when Stetson tased the driver. The driver fell to the ground, after which the deputies handcuffed him without incident. Thereafter, the deputies learned that the driver was not who they thought he was. Instead, he was the vehicle's owner: plaintiff, Ty Shanaberg. As it turned out, Brandon Scott Powell had allegedly stolen the vehicle months before, but the police later recovered it. After recovery, however, the police accidentally re-entered the vehicle into the stolen-vehicle database.

Shanaberg later sued Deputy Stetson, two other deputies who were on scene, Licking County, and other defendants under 42 U.S.C. § 1983. Shanaberg and the defendants moved for summary judgment. Relevant to this appeal, Stetson argued that he was entitled to qualified immunity on Shanaberg's excessive-force claim, the other two deputies argued that they were entitled to summary judgment on any claims against them, and Licking County argued that it was entitled to summary judgment on Shanaberg's *Monell* claim.[1] The district court denied Shanaberg's motion and granted defendants' motions. Shanaberg now appeals.

II.

We review de novo the district court's grant of qualified immunity to Stetson. *Libertarian Nat'l Comm. v. Holiday*, 907 F.3d 941, 945 (6th Cir. 2018). To overcome that immunity and make it to a jury, Shanaberg must show that (1) Stetson violated a constitutional right and (2) the violated right was clearly established when Stetson acted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The first prong resolves this case. An excessive-force claim turns on whether an officer's actions were "objectively reasonable" given the circumstances he confronted. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Because the test is objective, the officer's intent is immaterial. *Id*. Instead, we ask how a reasonable officer would have seen things in the heat of the moment, not in hindsight. *Id*. at 396. The overarching determination we make is whether the "totality of the circumstances" justified the degree of force an officer used. *Bletz v. Gribble*, 641 F.3d 743, 751 (6th Cir. 2011) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). To make that decision, we examine three factors: the severity of the crime at issue; whether the

---

[1]*Monell v. Dep't of Social Servs*., 436 U.S. 658 (1978).

suspect posed an immediate threat to the officers or others; and whether the suspect actively resisted arrest or attempted to evade it.  *Graham*, 490 U.S. at 396.

Many of our tasing cases rise and fall with the third factor, *see, e.g.*, *Thomas v. City of Eastpointe*, 715 F. App'x 458, 460 (6th Cir. 2017) (collecting cases and noting that we have "drawn the line at the suspect's 'active resistance'"), but here the second factor is dispositive. Stetson reasonably feared that Shanaberg was armed and intoxicated.  Shanaberg was also verbally belligerent—yelling at the deputies and repeatedly refusing to comply with their reasonable request that he lie down on the ground, which would have placed them in a safer position as they approached to handcuff him.  This made for a dangerous combination. A reasonable officer in Stetson's position would have feared that Shanaberg might react to any attempt to detain him by drawing a weapon or reaching for one.  And that fear, alone, made it objectively reasonable to tase Shanaberg to end the threat to the deputies' safety.

On this issue, Shanaberg argues that he had surrendered to the officers before being tased when he sank to his knees and placed his hands in the air.  He cites a few cases in support of his position, *see, e.g.*, *Kent v. Oakland County*, 810 F.3d 384, 391 (6th Cir. 2016); *Correa v. Simone*, 528 F. App'x 531, 534 (6th Cir. 2013); *Thomas v. Plummer*, 489 F. App'x 116, 126 (6th Cir. 2012), but we find them distinguishable.  Present here, and missing in those cases, was a suspect who was reported to be armed and dangerous and who was verbally belligerent in response to reasonable requests to further officer safety by moving to a less threatening position before handcuffing.  In *Kent*, we affirmed the denial of qualified immunity to a police officer who tased a man after he interfered with emergency medical efforts to resuscitate his dead father.  810 F.3d at 387–88.  Unlike Shanaberg, the tasing subject in *Kent* was not suspected of a crime, was not reported armed or dangerous, and was tased in his own home, which we emphasized is "one of the most sacred of spaces under the Fourth Amendment's protections."  *Id.* at 394.  We similarly affirmed the denial of qualified immunity to a police officer for tasing a suspect in *Correa*, which involved circumstances that are also distinguishable from this case.  528 F. App'x at 532. In *Correa*, although the police officer claimed he told Correa to get down on the ground, Correa contended that he got down on his knees with his hands in the air, and that he responded to all of the officer's commands.  *Id.*  The district court found that there were questions of fact about

whether Correa was complying with the officer's verbal orders.  *Id.* at 533.  Our holding in *Correa*, in other words, did not take into account the officer's claim that Correa refused to lie down when told to do so, much less that Correa repeatedly refused to do so.

Finally, in *Thomas*, we denied qualified immunity to a police officer who tased a passenger in a car that had been pulled over due to the driver having a felony warrant for his arrest.  489 F. App'x at 126–27.  We determined that the tasing violated the Fourth Amendment because at the time of the tasing, the passenger "had assumed a completely submissive position by dropping to her knees and raising her hands above her head."  *Id.* at 125.  *Thomas* is distinguishable from this case in multiple respects: (1) in *Thomas*, the tasing subject was not suspected of a crime or considered to be armed or dangerous, *id.* at 117–18, whereas here the police reasonably suspected that Shanaberg had stolen a vehicle and was armed and dangerous; and (2) although Thomas disobeyed Officer Plummer's commands to lie down, she "posed absolutely no threat to his or any other officer's safety" at the time she was tased in the back, *id.* at 126.  This simply cannot be said of Shanaberg from the perspective of a reasonable officer. This is not a case where the plaintiff merely failed to comply with officer instructions; Shanaberg repeatedly refused to take an action that a reasonable officer would have regarded as a way of measurably reducing the risk to the officer's safety.

In hindsight, Shanaberg argues that he posed no real threat because he was not armed and may have eventually complied with the command.  We do not, however, judge Stetson's actions with reflective speculation.  Rather, we examine what was reasonable when Stetson acted, knowing what Stetson knew—and nothing more.  Stetson knew Shanaberg was potentially armed and dangerous, and—while officers were approaching—tried to reach into his truck.  He also knew Shanaberg was verbally hostile.  Further, Shanaberg refused to comply with repeated commands to further officer safety by lying down on the ground.  That knowledge made it objectively reasonable for Stetson to tase Shanaberg after warning him that tasing was imminent if he did not lie on the ground.  For these reasons, the district court correctly granted qualified immunity in favor of Stetson.

III.

Shanaberg also asserts that the other two deputies who were on scene are liable for failing to stop Stetson from tasing him.  He raised the same argument in his opposition to defendants' summary-judgment motion.  But the district court rightly rejected it, ruling that he had "failed to plead [a failure-to-intervene] cause of action in his [c]omplaint."  Moreover, because the tasing was justified, a viable claim for failure to intervene to prevent the tasing does not exist.

For these reasons, the district court correctly rejected Shanaberg's failure-to-intervene claim.

IV.

Finally, we turn to Shanaberg's *Monell* claim, which challenges the Sheriff's Office's use-of-force policy.  To prevail on his claim, he must demonstrate "a direct causal link between the policy and the alleged constitutional violation," which would suggest that Licking County's deliberate conduct was the "moving force" behind the violation. *Graham ex. rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004).  That he cannot do.  As explained above, no constitutional violation occurred because Stetson's use of force was objectively reasonable.  Moreover, there can be no link between a policy and a constitutional violation when there is no violation to begin with.  Thus, the district court correctly granted judgment in Licking County's favor.

V.

For these reasons, we affirm the district court's grant of summary judgment in defendants' favor.

---

## CONCURRING IN THE JUDGMENT

---

NALBANDIAN, Circuit Judge, concurring in judgment. I agree that the district court correctly granted qualified immunity in favor of Deputy Brian Stetson. But I would grant qualified immunity for a different reason: it is not clearly established, in the context of this case, what level of verbal noncompliance, or "verbal belligerence," justifies a taser's use. As a result, I concur in the judgment only.

\*　　\*　　\*

To start, I am not so sure that "[t]he first prong resolves this case." (Maj. Op. at 3.) I would not hold that Stetson acted reasonably when he tased Ty Shanaberg, while Shanaberg was on his knees with his hands in the air. As we've explained before, a suspect "assume[s] a completely submissive position by dropping to her knees and raising her hands above her head." *Thomas v. Plummer*, 489 F. App'x 116, 125 (6th Cir. 2012). And when a suspect assumes that position, we have "little trouble finding that a hypothetical reasonable officer would have known that tasing a suspect who is on her knees with her hands in the air is objectively unreasonable." *Id.* A suspect's noncompliance does not alone dictate a different outcome. Indeed, tasing a suspect can be unreasonable, even if the suspect does not comply with an officer's command. For example, we denied qualified immunity in *Plummer* even though the suspect, who had taken a submissive position, "did not lie face-down on the ground as Officer Plummer ordered." *Id.* at 127. The officers in *Plummer* even "screamed at [the suspect]: 'Get on the ground! Lay down on the ground now! Get down!'"—but the suspect failed to comply. *Id.* at 117. And this was not just one command: "Both officers repeatedly ordered [the suspect] to 'get down on the ground.'" *Id.* at 118. But rather than comply, the suspect asked "What did I do? What did I do?" *Id.* Officer Plummer tased the suspect while she was on her knees with her hands in the air (but not lying face down)—and we denied qualified immunity. So as *Plummer* shows, a failure to comply with repeated commands to lie face-down on the ground—coupled with verbal noncompliance—does not automatically justify the use of a taser.

To be sure, Shanaberg engaged in aggravating circumstances absent in *Plummer*. To start, the officers here reasonably believed that Shanaberg "could be armed and dangerous." (R. 54-1 at 10.) There were no allegations of a weapon in *Plummer*. The officers also suspected that Shanaberg could be intoxicated and driving a stolen vehicle. In contrast, the officers in *Plummer* cited the suspect for comparatively minor crimes: obstructing official business and possession of an open flask. *Plummer*, 489 F. App'x at 118.

But I'm not convinced that these differences matter. Take our decision in *Correa v. Simone*, where we likewise denied qualified immunity following an officer's use of a taser. 528 F. App'x 531 (6th Cir. 2013). In *Correa*, dispatch warned officers that a suspect was wanted for an assault at a bar—and that "the suspect was a man with a gun." *Id.* at 532. The officer found the suspect and "asked him to get on his knees and then lie face down on the ground." *Id.* But the suspect did not fully comply. Instead, "[he] took off his backpack and put his shirt . . . on the ground. He then dropped to one knee and then the other, but he would not drop to the ground." *Id*. The officer then tased the suspect. On one hand, we acknowledged that "[t]he crime was severe enough . . . to weigh in [the officer]'s favor because the broadcast described an assault by a man with a firearm." *Id.* at 534. But we still denied qualified immunity because the suspect "did not pose an immediate threat to the safety of the officer or others because, while he allegedly had a gun, at the time [the officer] used a taser, [the suspect]'s hands were in the air and he was not resisting." *Id.* So as *Correa* shows, a failure to comply with commands to lie face-down on the ground—even when the officer believes the suspect has a gun (and is wanted for a violent crime)—does not automatically justify the use of a taser.

True, there is some light between Shanaberg's actions and those in *Correa*. In *Correa*, there is no evidence that the suspect was verbally belligerent. In contrast, Shanaberg yelled at the officers—refusing to comply with their demands—at least nine times. This ranged from questioning "What did I do?" (several times) to more direct responses of "NO!" and "No I'm not" when asked if he would comply with the officers' commands. And Shanaberg's tone became more aggressive during the exchange, eventually yelling "What the fuck did I do?"

We have recognized that *some* level of verbal noncompliance alone can justify the use of a taser. When a suspect actively resists arrest, an officer can use a taser. *Kent v. Oakland Cty.*,

810 F.3d 384, 396 (6th Cir. 2016). And we have linked verbal noncompliance with active resistance. When noncompliance is paired with a "verbal showing of hostility," this combination can amount to active resistance, justifying the use of a taser. *Eldridge v. City of Warren*, 533 F. App'x 529, 535 (6th Cir. 2013). Unfortunately, we do not have great examples of what type or level of "verbal hostility" or "verbal belligerence" justify the use of a taser. We have an extreme example in *Caie v. West Bloomfield Twp.*, 485 F. App'x 92 (6th Cir. 2012). But there, the suspect's suicidal statements included that he would "fight the officers so that they would have a reason to kill him." *Id.* at 94.

In *Eldridge*, we suggested that something less could amount to active resistance if a statement, "along with a lack of physical cooperation, demonstrated a deliberate choice to be defiant." 533 F. App'x at 534 (explaining that the statement "was the final straw in a series of consciously-resistive acts"). And in *Correa*, we again hinted that verbal hostility, in some circumstances, could justify the use of a taser. We explained that "[t]he mere possession of a gun is not, in and of itself, resistance [enough to justify the use of a taser] unless coupled with something more, such as physical *or verbal action*." 528 F. App'x at 535–36 (emphasis added). In other words, the officer's use of the taser could have been justified in *Correa* if the suspect was also verbally noncompliant or hostile.

These cases show the problem with Shanaberg's claim: it was not clearly established what level of "verbal belligerence" could justify the use of a taser. And to be sure, Shanaberg's conduct fell squarely within the uncertainty in our caselaw: he was a "verbally hostile" suspect who the officers considered "armed and dangerous." These two factors connect what is missing in *Plummer* and *Correa*. Plummer didn't have a weapon. And Correa wasn't verbally noncompliant. But Shanaberg checked both boxes. So even though I don't believe that Shanaberg's verbal-noncompliance rose to level that justified the use of a taser, Stetson is still entitled to qualified immunity.